# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

---

In Re:

**Trent Jenkins and
Vickie Jenkins,**

            **Debtors.**

**Bankruptcy Case
No. 12-41659-JDP**

---

# MEMORANDUM OF DECISION
# AND ORDER

---

**Appearances:**

Mary Kimmel, Boise, Idaho, Attorney for the U.S. Trustee.

Philip B. Palmer, Pocatello, Idaho.

## *Introduction*

On April 9, 2013, the Court conducted an evidentiary hearing

concerning the Order to Show Cause ("OSC") directed to bankruptcy

petition preparer ("BPP") Philip Bruce Palmer ("Palmer").  The OSC,

issued *sua sponte* on January 3, 2013, Dkt. No. 20, ordered Palmer to appear

MEMORANDUM OF DECISION – 1

and show cause why he should not be found to be in violation of the

various provisions of § 110[1] regulating the practices of BPPs; it also warned

he may be subject to various potential sanctions for any violations that may

be found to have occurred.

The original hearing on the OSC, at which Palmer and counsel for

the United States Trustee (the "UST") appeared, was continued to allow

the parties time to prepare to offer evidence and testimony.  Palmer

appeared at the continued hearing on April 9, 2013, testified, and was

questioned by the UST's attorney and the Court.  After an opportunity to

present other evidence and testimony, the parties argued their positions.

At the conclusion of the hearing, the Court took the issues under

advisement.

Having duly considered the record, the evidence and the arguments

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 2

of the parties, for the reasons explained below,[2] the Court concludes that

Palmer has indeed violated several of the restrictions in § 110 in connection

with his activities in relation to this bankruptcy case. As a result, in the

exercise of this Court's discretion, Palmer will be ordered to refund all

amounts he and his company received from the Debtors in this case; and

he shall be fined $200 on account of his statutory violations.

### *Facts*

Debtors began their unsuccessful attempt[3] to obtain debt relief

under chapter 7 case by filing a pro se petition and related schedules on

December 7, 2012. Dkt. No. 1. Before filing, Debtors had met with Palmer,

who agreed to act as Debtors' BPP. *See* Declaration and Signature of Non-

Attorney Bankruptcy Petition Preparer/Disclosure of Compensation of

---

[2] This Memorandum of Decision represents the Court's findings of fact and conclusions of law. Rules 9014; 7052.

[3] Unfortunately, Debtors' case was dismissed on February 4, 2013, on motion by the UST because they had failed to obtain the requisite pre-bankruptcy credit counseling. Dkt. No. 27; § 109(h)(1) (providing that, with limited exceptions, an individual must obtain credit counseling within the 180 days prior to the filing of a bankruptcy petition). Apparently, Debtors were unaware of the credit counseling prerequisite to eligibility for bankruptcy relief, likely yet another consequence of their decision to proceed without counsel.

MEMORANDUM OF DECISION – 3

Bankruptcy Petition Preparer, Dkt. No. 5.  According to Palmer's fee disclosure filed in the bankruptcy case, he received $100 for his BPP services, which were preformed in October 2012.  *Id.* at 3.

Along with their petition, Debtors filed an application to proceed *in forma pauperis* ("IFP") to obtain a waiver of the filing fee.  Dkt. No. 3.  In responding to a question in that application, which asked about payments they had made to any BPP, and contrary to the information in Palmer's BPP disclosure, Debtors indicated they had paid $300 to someone "other than an attorney . . . such as a bankruptcy petition preparer" for "services in connection with this [bankruptcy] case, including the completion of . . . the bankruptcy petition or schedules."  Part D, Question #14, *id.* at 2.

On January 3, 2013, the Court conducted a hearing concerning Debtors' IFP application at which the Court queried Debtors about the discrepancy in the amount indicated they had paid to the BPP in the application, as compared to the amount listed in Palmer's disclosure. Debtors told the Court that they had indeed given Palmer a total of $300, but that $200 of this amount had been paid pursuant to the terms of an

MEMORANDUM OF DECISION – 4

agreement with a company known as Century Credit Corporation; they also provided the Court a copy of the contract.  Dkt. No. 38, Hr'g Tr. 9:9-14, Jan. 3, 2013.  Later in the hearing, Debtors clarified their understanding, and stated that the entire amount went to Palmer for preparation of their bankruptcy filing, *id.* at 10:23-24, and that Palmer had provided no other services to Debtors other than preparing their bankruptcy schedules, *id.* at 14:5-7.

After that hearing, based on the Court's record, together with the information supplied by Debtors, the Court entered the OSC directed to Palmer.  Dkt. No. 20.  The OSC advised Palmer that the Court was concerned the fee he received from Debtors, $300, may have been excessive, and that it appeared Palmer may have provided services to Debtors beyond those appropriate for performance by a BPP.  *Id.*

Palmer filed a terse "Statement of Petition Preparer" in response to the OSC listing traditional BPP services he provided to Debtors in which he represented that he had received only $100 for these services.  Dkt. No. 28.

MEMORANDUM OF DECISION – 5

An initial hearing on the OSC was held on February 12, 2013, at which Palmer appeared, along with counsel for the UST.  The Court and parties discussed the issues raised by the OSC, and the Court continued the hearing to give the parties ample opportunity to offer evidence and testimony concerning those issues.

On April 9, 2013, the Court conducted an evidentiary hearing regarding the OSC.  At the hearing, the UST offered and the Court admitted into evidence, by stipulation, documentary Exhibit Nos. 100 through 111.  The UST also called Palmer as a witness to testify concerning his activities in this case.

During his testimony, consistent with his fee disclosure and Statement, Palmer acknowledged that he did indeed serve as the Debtors' BPP in this case, that he had prepared the bankruptcy papers for them to file, and that he had charged Debtors, and received from them, $100 for these services.  Dkt. No. 39, Hr'g Tr. 9:18-20, April 3, 2013.[4]

---

[4]  Palmer also acknowledged that he had formerly worked, for over twenty years, as an attorney in Idaho with a significant bankruptcy practice.  He

MEMORANDUM OF DECISION – 6

However, Palmer further testified he is the equity owner and

president of Century Credit Corporation ("Century"). *Id.* at 12:5-6.

Palmer stated this company "[p]rovides credit counseling, debt

consolidation, bankruptcy referral, [and] investment advice," to others. *Id.*

at 12:13-15. Palmer admitted Debtors paid him an additional $200 for

services, but he stated the payment was received by Century, and was

compensation for the counseling and consulting services described in the

written contract between Century and Debtors. Exhibit 103; *Id.* at 13:2-6.

That document, dated June 29, 2012, confirms that the cost of Century's

"consulting" services was $200, and it is signed by Debtors and by Palmer

on behalf of Century. At the bottom of the contract there appears a receipt

showing $100 was paid in cash by Debtors on the day the contract was

signed.

When counsel for UST questioned Palmer about the propriety of the

payments made by Debtors to Century for the credit analysis and

was not licensed to practice law when he performed the services in this case for
Debtors.

MEMORANDUM OF DECISION – 7

recommendation per the agreement, Exhibit No. 106, he added,

> I'm in complete compliance, ma'am.  I might just add that you're the one that told me about the [*Scott v. United States Trustee (In re Doser)*, 281 B.R. 292 (Bankr. D. Idaho 2002), *aff'd* 292 B.R. 652 (D. Idaho 2003), *aff'd* 412 F.3d 1056 (9th Cir. 2005) decision], and I read the *Scott* case.  The *Scott* case didn't allow for preparers to do anything that Century Credit Corporation is doing.  So that being the case, I made arrangements for obtaining financial information from potential bankruptcy clients . . . through a corporation.  I take all of my bankruptcy – almost all my bankruptcy referrals from Century Credit Corporation who does all the financial analysis, all the gathering of information, everything the *Scott* case says preparers can't do.

*Id.* at 13:6-17.  Explaining this operation further, Palmer admitted that he had personally interviewed Debtors, gathered their financial information, and authored and prepared the Century report produced for Debtors concerning their financial predicament.  Palmer insisted he performed these services solely as a representative of Century, not as an individual.  He also acknowledged that this mode of operation was consistent with that he generally employs with other customers in providing any services to them on behalf of Century.  *Id.* at 16:21-23.

MEMORANDUM OF DECISION – 8

The UST's attorney then asked Palmer about Exhibit No. 106, the "Financial Analysis" prepared by Palmer on Century Credit Corporation letterhead, which was delivered to Debtors.  That document, dated October 24, 2012, represents that its contents are not intended to constitute legal advice.[5]  Notwithstanding this disclaimer, however, the report then assesses Debtors' liabilities, breaking those debts into secured and unsecured categories, and in its "Conclusion & Recommendation" section, advises Debtors that:

> We recommend Chapter 7 bankruptcy as a solution to your significant unsecured debt problems.  Your liabilities

---

[5] More precisely, the report provides:

This report is not intended to constitute legal advice, should not be relied upon as legal advice, and should not be used as a substitute for legal advice or representation.  If you feel like you need legal advice, you probably do need legal advice, and you are encouraged to obtain the services of a lawyer.  If you rely on the conclusions and recommendations of this report you do so at your own risk, without any assurances or guarantees from Century Credit Corporation, a non-profit organization.

Exhibit 106 at 1.

MEMORANDUM OF DECISION – 9

> significantly outdistance your assets, and liquidating
> assets would not be a solution.  Without another source of
> income, your cash flow is insufficient to fully satisfy your
> regular expenses and your unsecured debt obligations,
> and there is no immediate solution except to reduce your
> expenses by a resort  to bankruptcy liquidation of debt.

Exhibit No. 106 at 6.

In testifying about this report, Palmer admitted he understood that, apparently acting on "Century's" recommendation, Debtors agreed they would seek bankruptcy relief, whereupon Palmer, now supposedly acting in his personal capacity as a BPP, used the same information he had collected from Debtors in completing the "Financial Analysis" to prepare Debtors' bankruptcy schedules, charging them an additional $100 to do so. In other words, in his view, after advising Debtors to file for bankruptcy, Palmer's company supposedly "referred" their case to BPP Palmer individually to prepare their bankruptcy documents, charging Debtors an additional $100.  Dkt. No. 39, Hr'g Tr. 24:11-12, April 3, 2013.  During his testimony, Palmers repeatedly admonished counsel for the UST that "there isn't anything tricky about any of this."  *Id.* at 24:21.

MEMORANDUM OF DECISION – 10

After responding to questions from the Court about his testimony, Palmer was given an opportunity to present additional evidence. He declined this offer. In argument, Palmer was adamant that had acted consistent with the BPP discussion in this Court's *Scott* decision, and he argued during one exchange with the Court, that it would be "absurd" and "ridiculous" for the Court to conclude that he and other BPPs may only properly function as word processors, or what was formerly known as typists. *Id.* at 46:23-47:3.

Palmer's opinions concerning the meanings of § 110, and the implications of the Court's many prior decisions regarding BPPs, are at best misinformed. At worst, Palmer's view of the rules that govern BPPs is no more than an ineffective dodge.

///

### *Analysis and Disposition*

## I.  Applicable Law

Section 110 was added to the Bankruptcy Code in October 1994. *See*

MEMORANDUM OF DECISION – 11

*Bankruptcy Reform Act of 1994*, Pub. L. No. 103-394, § 110, 108 Stat. 4105,

4150 (1994).  Its purpose was to curb perceived abuses by non-lawyer

bankruptcy petition preparers.  *Id.*; *see also Consumer Seven Corp. v. United

States Trustee (In re Fraga)*, 210 B.R. 812, 816-17 (9th Cir. BAP 1997); *In re

Doser*, 281 B.R. 292, 300 (Bankr. D. Idaho 2002), *aff'd* 292 B.R. 652 (D. Idaho

2003), *aff'd* 412 F.3d 1056 (9th Cir. 2005); *In re Farness*, 244 B.R. 464, 466-67

(Bankr. D. Idaho 2000).  In this light, the House Judiciary Committee

Report concerning this legislation observed that "[b]ankruptcy petition

preparers not employed or supervised by any attorney have proliferated

across the country.  While it is permissible for a petition preparer to

provide services *solely limited to typing*, far too many of them also attempt

to provide legal advice and legal services to debtors . . . ."  140 Cong. Rec.

H10,770 (daily ed. Oct. 4, 1994) (emphasis added).  Consistent with the

intent of Congress, the case law has confirmed that BPPs are prohibited

from practicing law, and the only service they may legitimately offer under

the Code is word-processing bankruptcy forms.  *See, e.g., Frankfort Digital*

MEMORANDUM OF DECISION – 12

*Servs., Ltd. v. Kistler (In re Reynoso)*, 477, F.3d 1117, 1125 (9th Cir. 2007)

(citing *The Bankruptcy Reform Act of 1994*).

Section 110 defines a "bankruptcy petition preparer" as "a person, other than an attorney for the debtor or employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." § 110(a)(1).  Section 101(41) defines the term "person," as used in the Bankruptcy Code, to include an "individual, partnership, and corporation."  "Document for filing" is defined in turn as "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title." § 110(a)(2).  In other words, a BPP is any individual, person, or corporation that prepares a document for a debtor in a bankruptcy case for compensation.

Section 110 imposes affirmative duties on BPPs.  *See* §§ 110(b)-(d).  It also proscribes certain activities by BPPs.  Most notably, in § 110(e)(2)(A), the Code commands that "[a] bankruptcy petition preparer may not offer a

MEMORANDUM OF DECISION – 13

potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B)."  Subparagraph (B) defines legal advice to include "advising the debtor– (i) whether – (I) to file a petition under this title; or (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate . . . [or] (vi) concerning how to characterize the nature of the debtor's interest in property or the debtor's debts . . . ."

A BPP may not circumvent the prohibitions of the Code by mere words.  Indeed, this Court has held that when a BPP attempts to evade the Code's restrictions concerning legal advice by obtaining a disclaimer from the debtors, "the quality and effectiveness of any disclaimer executed by debtors is nil."  *In re Bush*, 275 B.R. 69, 80 n.21 (Bankr. D. Idaho 2002).

Of course, in addition to the express prescriptions contained in the Code, a BPP may also not engage in the unauthorized practice of law, and to determine whether a BPP has done so, courts look to state law.  *In re Reynoso*, 477 F.3d at 1125.

Section 110(h)(2) requires a BPP to file, under penalty of perjury, a

MEMORANDUM OF DECISION – 14

declaration with the Court at the time of the filing of a debtor's bankruptcy petition that accurately discloses "any fee received from or on behalf of the debtor."  If a BPP fails to file a proper disclosure, the Code directs the bankruptcy court to order that all the fees charged by the BPP to the debtor be forfeited.  § 110(h)(3)(B).

The statute provides further consequences if the bankruptcy court finds that a BPP has violated the provisions of § 110, or has engaged in "any act that the court finds to be fraudulent, unfair, or deceptive."  If the Court so finds, it may order payment of damages to the debtors.  § 110(i). The Court may enjoin the BPP from either violating the Code in the future, or in appropriate cases, barring the offender from acting as a BPP at all. § 110(j).  Finally, the Code authorizes the Court to fine the offending BPP in an amount not to exceed $500 for each violation of any provision of § 110, or in higher amounts for violations accompanied by certain aggravating factors.  § 110(l).

**II.  Application of the Law to the Facts**

MEMORANDUM OF DECISION – 15

In one respect, Palmer's assessment of this situation is correct:  there is nothing tricky about characterizing his activities in this case.  As explained above, § 110 is broad in its scope, and it terms are clear concerning the consequences when a BPP chooses to ignore the Code's requirements and proscriptions.  Despite Palmer's suggestion that it is an absurd or ridiculous conclusion, the Court finds that Palmer has violated § 110 by his actions in this case.  Palmer is therefore subject to the sanctions.

Palmer has not disputed, nor can he, that he is a BPP subject to the provisions of § 110 in this case.  He prepared Debtors' bankruptcy documents for filing in the bankruptcy court in exchange for compensation for these services.  Palmer claims, however, that he charged an appropriate fee for his personal services as a BPP (*i.e.,* $100),[6] and he feels that he properly disclosed his role and the details of his compensation in his filings

---

[6] Were Palmer's version of the facts correct, which it is not, a $100 fee for BPP services would indeed be a reasonable one in this case, as in most.  $300, on the other hand, constitutes an excessive fee and is nearly double that amount this Court routinely approves for BPP services.

MEMORANDUM OF DECISION – 16

with the Court.  Contrary to the UST's position, Palmer insists that because

the balance of the services he provided to Debtors – the financial analysis

and recommendations provided to Debtors – came in his role as a

representative of his company, Century, he is insulated from the operation

of § 110.  The Court respectfully disagrees with this simplistic

rationalization about the meaning and reach of § 110.

There is no doubt that Palmer personally orchestrated all aspects of

his relationship and dealings with Debtors.  Whether purporting to act as

an individual or, conveniently, as the owner or officer of Century, it was

Palmer who solicited the relevant data and information from Debtors

about their distressed financial situation; "analyzed" that information by,

among other things, identifying their secured, unsecured, and other debts;

advised Debtors to file a chapter 7 bankruptcy case; and then prepared the

documents for filing in the bankruptcy court.  Despite what Palmer says,

Debtors understood Palmer's comprehensive role as such, and they

certainly did not appreciate, nor understand, the purported distinction

MEMORANDUM OF DECISION – 17

between Palmer and Century that he attempts to draw, as evidenced by the

conflicting information they honestly supplied to the Court about the

payments they made to Palmer.  Indeed, if Debtors were confused about

the nature and extent of Palmer's services, it was the result of the

deceptive, or at least unfair, manner in which Palmer attempted to conflate

Century's services with his own.

When fairly interpreted, the record demonstrates that, for purposes

of § 110(a)(1), Palmer acted as a BPP, both on his own, and through the

services ostensibly being provided to Debtors by Century.  At bottom, he

agreed to perform a package of services for Debtors: to analyze their

financial situation and give them advice as to a solution to their problems,

and to prepare documents for Debtors to file a bankruptcy case, all in

exchange for $300 in compensation.  *See* § 110(a)(2).  While using Century

letterhead for the report, it was Palmer who prepared the "Financial

Analysis" document which ultimately advised Debtors to file a chapter 7

case.  As Palmer admits, the very same information he solicited from

MEMORANDUM OF DECISION – 18

Debtors to create this document he thereafter used to draft the documents

which Debtors filed with this Court.  The Court rejects Palmer's contention

that, so long as he wears his corporate hat, he may avoid the prescriptions

of § 110 in his dealings with Debtors.  To the contrary, in this case, all of

Palmer's actions, whether supposedly performed by Century or

personally, are subject to the BPP rules and restrictions in the Bankruptcy

Code.

Many times during the OSC hearing and argument Palmer insisted

that his actions are consistent with the holding of the Court in *Scott v.*

*United States Trustee (In re Doser)*, 281 B.R. 292 (Bankr. D. Idaho 2002), *aff'd*

292 B.R. 652 (D. Idaho 2003), *aff'd* 412 F.3d 1056 (9th Cir. 2005).  *In re Doser*

involved an individual BPP who had purchased a document preparation

franchise from a California corporation.  As part of the services it provided,

the corporation offered the BPP/franchisee's customers access to a

"supervising attorney," and after the BPP collected the information from

the debtor it was sent to the corporation, which in turn "processed" this

MEMORANDUM OF DECISION – 19

initial paperwork into the appropriate bankruptcy forms that were

returned to the franchisee, and then delivered to the customer and filed

with the Court.  In holding the BPP violated § 110 for various reasons, the

Court noted that the corporation likely was a BPP under § 110(a)(1) as well

as the individual franchisee.  *In re Doser*, 281 B.R. at 303.  The Court,

however, did not finally conclude that the corporation was a BPP due to

the lack of participation of the corporation in the case.  *Id.* at 304.

Palmer should take no solace in *In re Doser*.  Here, the Court finds as

a matter of fact that Palmer, individually and through his company, acted

as the BPP for purposes of § 110(a)(1) in providing services to Debtors.

Palmer personally solicited all the financial information from Debtors,

"analyzed" that data, recommended to Debtors that they file a chapter 7

bankruptcy petition, and then used it to prepare Debtors' bankruptcy

filings.  That Palmer ostensibly served as a agent of his company during

parts of this process is a distinction without a difference for purposes of §

110 – Palmer, the individual, was involved in all aspects of the process.  He

MEMORANDUM OF DECISION – 20

can not shirk responsibility for these actions simply by employing

corporate contract and report forms or letterhead.

In his conduct, Palmer violated § 110 in several respects.  In

contravention of the Code, Palmer offered Debtors prohibited legal advice

when he:  (1) advised Debtors to file a bankruptcy petition, and more

specifically, to file that petition for relief under chapter 7, a violation of

§§ 110(e)(2)(B)(i)(I) and (II); and (2) characterized the nature of Debtors'

debts, a violation of § 110(e)(2)(B)(vi).  This prohibited legal advice appears

in the Century "Financial Analysis" report he personally prepared and

gave to Debtors, Exh. No. 106.  In that document, after Palmer purports to

parse Debtors' secured and unsecured debts, he concludes by succinctly

advising, "We recommend Chapter 7 bankruptcy as a solution to your

significant unsecured debt problems."[7]

Palmer's attempt to evade the Code's restrictions prohibiting

---

[7]  Palmer's use of "We" in this document is telling, even if it was
unintentional.  The Court presumes it is a collective reference to both Palmer and
Century.

MEMORANDUM OF DECISION – 21

unqualified BPPs from offering legal advice to vulnerable potential

bankruptcy debtors was intentional and inappropriate.[8]  Given the facts,

this transgression of § 110's prohibitions is sufficiently egregious, in the

Court's opinion, to justify the imposition of a combined fine of $200[9]

payable by Palmer, as provided in § 110(l)(4), to the to the UST.[10]

Additionally, and contrary to § 110(h)(2), Palmer failed to disclose

the full amount of the fees being charged to Debtors for his bankruptcy

petition preparation services in the BPP disclosure form he filed with the

---

[8]  Again, Palmer can not avoid responsibility by telling debtors that his legal advice is not indeed legal advice.  Moreover, the disclaimer in the written report ostensibly denying that the recommendations constituted legal advice is not only legally ineffective to avoid a violation of the Code, it serves as clear evidence that Palmer appreciated that this aspect of the report was improper.

[9]  Section 110(l)(1) provides that: "A bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure."  The Court notes there are at least two distinct violations of subsection (e) discussed above.  In the exercise of its discretion, the Court finds a total fine of $200 to be appropriate here.

[10]  The Court suspects, but need not find, that Palmer's conduct likely also violated state law prohibiting the practice of law without a license.  *See* Idaho Code §§ 3-104 and 3-420; *Idaho State Bar v. Meservy*, 335 P.2d 62 (Idaho 1959). The UST should consider referring this matter to the Idaho State Bar or other appropriate authorities.

MEMORANDUM OF DECISION – 22

Court.  Though Palmer disputes it, as a matter of fact, the Court finds that

the fee he charged Debtors for the "package" of services provided by

Palmer was not $100, but $300.  Not only was the true amount of the fee

not properly disclosed, when the actual amount of the fee is considered in

light of the document preparation services Palmer provided, the Court

finds this sum to be excessive.  The consequences of charging an excessive

$300 fee in this fashion, as required by § 110(h)(3)(B),[11] is that Palmer must

forfeit all fees charged to Debtors.[12]

Palmer should modify his operations to comply with § 110.  If he

does not, upon request of the UST, the Court will consider enjoining

Palmer from future violations of § 110, or barring him from operating as a

BPP altogether.  *See* §§ 110(j)(1) and (2).[13]  Indeed, if Palmer fails to correct

---

[11] Section 110(h)(3)(B) reads, "All fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g)."

[12] It should be noted that the Court could also require Palmer to forfeit all of his fees charged for his other violations of § 110.  *See supra*, note 11.

[13] Section 110(j)(1) and (2) provides:

MEMORANDUM OF DECISION – 23

his conduct in light of this decision, the Court, in the exercise of its

(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

(2)(A) In an action under paragraph (1), if the court finds that--

(i) a bankruptcy petition preparer has--
(I) engaged in conduct in violation of this section or of any provision of this title;
(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or
(III) engaged in any other fraudulent, unfair, or deceptive conduct; and
(ii) injunctive relief is appropriate to prevent the recurrence of such conduct,
the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty imposed under this section, or failed to disgorge all fees ordered by the court the court may enjoin the person from acting as a bankruptcy petition preparer.

MEMORANDUM OF DECISION – 24

contempt power, may enjoin Palmer on its own motion.  *See* § 110(j)(3).[14]

## ORDER

For the foregoing reasons, and for good cause, **IT IS HEREBY**

**ORDERED THAT:**

(1) Palmer shall return to Debtors the $300 he received from them

within fourteen (14) days of the entry of this Order;

(2) Palmer shall pay a $200 fine to the UST within fourteen (14) days

of the date of this Order; and

(3) Palmer shall file an affidavit with the Court evidencing his timely

compliance with the requirements of paragraphs (1) and (2) of this Order

within fourteen (14) days of the date of this Order.

---

[14] Section 110(j)(3) provides:

The court, as part of its contempt power, may enjoin a
bankruptcy petition preparer that has failed to comply with a
previous order issued under this section. The injunction under
this paragraph may be issued on the motion of the court, the
trustee, or the United States trustee (or the bankruptcy
administrator, if any).

MEMORANDUM OF DECISION – 25

Dated:  June 11, 2013



_____
Honorable Jim D. Pappas
United States Bankruptcy Judge